UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA | Notice of Motion |
| - v - | 21- CR-269 (PKC) |
| KAREEM HASKINS | |
| Defendant. | |

---------------------------------------------------X

PLEASE TAKE NOTICE that upon the accompanying memorandum of law and exhibits, the undersigned will move the Court before the Honorable Pamela K. Chen, United States District Judge for the Eastern District of New York at the United States Courthouse located at 225 Cadman Plaza East, Brooklyn, New York, for an order granting the relief specified in the accompanying memorandum of law, and granting such other and further relief as the Court deems just and proper.

Dated:  December 8, 2021

                                                           Respectfully Submitted,

                                                           /s/_____
                                                           Ashley M. Burrell
                                                          *Attorney for Kareem Haskins*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

        - v -

KAREEM HASKINS
                      Defendant
-----------------------------------------------------X

**Memorandum of Law**

21-CR-269 (PKC)

## PRELIMINARY STATEMENT

Kareem Haskins has been charged with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Haskins anticipates that at trial, the government will seek to introduce a firearm, statements made to law enforcement, and a pretrial show-up identification made by an unnamed witness. Through defense counsel, Mr. Haskins moves 1) pursuant to Fed. R. Crim. P. 12(b)(3)(C) to suppress all tangible evidence seized in connection with law enforcement's illegal search and seizure of Mr. Haskins in violation of the Fourth Amendment, or in the alternative conduct an evidentiary hearing to resolve all disputed material issues of fact; 2) pursuant to Fed. R. Crim. P. 12(b)(3)(C), 18 U.S.C. §3501, and the Fourth and Fifth Amendments, to suppress statements made to law enforcement or in the alternative for an evidentiary hearing; and 3) pursuant to Fed. R. Crim. P. 12(b)(3)(C) to suppress identification evidence as impermissibly suggestive, or in the alternative for a *Wade* hearing. This motion is based on the memorandum of law, the attached affirmation, discovery documents, and any additional evidence that may become available to the Court.

2

Mr. Haskins also moves for the Court to grant any other relief deemed necessary including the opportunity for defense counsel to submit additional briefing after oral arguments and /or after an evidentiary hearing.

## I.   FACTUAL BACKGROUND

On January 25, 2021, at around 2:30 a.m., an unnamed male (hereinafter referred to as "911 caller" or "caller") called 911 and reported that two unknown male individuals held him at gunpoint and attempted to rob him. *Exhibit A* - 911 Call. The caller stated that the incident occurred a few minutes prior to him calling. *Id.* He provided the operator with a description of the two individuals. *Id.* The caller stated that the first male was Black, approximately 6 feet tall, and 150 to 160 pounds. *Id.* The caller also described what the suspect wore: black pants, a blue and black jacket, a black mask, and a black beanie. *Id.* Notably, the caller stated that he could only see the person's eyes.

The caller believed the second male was Black, slim, and approximately 5'11 or 6 feet tall. *Id.* The second male was wearing black pants and a gray sweater. *Id.* The caller was unsure whether the suspect had a mask on. *Id.* The two men were on foot and running towards Mermaid Avenue and 16th Street. *Id.* The caller did not state how long he observed the suspects for, the suspects' approximate age, their skin complexion, or any other identifying features.

NYPD officers began canvassing the vicinity of West 15th Street and Neptune Avenue in response to the purported attempted robbery. *See* ECF No. 1 - Criminal Complaint ¶5. Kareem Haskins was near Neptune Avenue and 22nd Avenue in Brooklyn, New York when officers stepped out of their police vehicle and immediately stopped him. Declaration, hereinafter Dec. ¶ 3. Notably, when stopped, Mr. Haskins was in a residential area near single-

4

family homes and high-rise New York City Housing Authority (NYCHA) apartment buildings.[1]

When stopped by police officers, Mr. Haskins was wearing a blue coat and khaki-colored pants. *Exhibit B* - Discovery Excerpt- KH30. Mr. Haskins is 6 '2 and weighs 180 pounds. *Exhibit B* - KH97. Mr. Haskins was alone when the police stopped him; there was no one directly in front of him and no one directly behind him. Dec. ¶ 3, 4. The corresponding sprint report states that at 2:37:15 a.m., NYPD officers stopped two males. *Exhibit B* – KH95. The report goes on to state that less than one minute later, at 2:38:05 a.m., officers stopped *another* male on Neptune and West 21st. *Id.*

Immediately after the officers stepped out of their vehicle, they physically seized Mr. Haskins and proceeded to search him. Officer bodycam footage does not show the initial seizure. It does, however, show multiple officers surrounding and searching Mr. Haskins. *Exhibit C – Officer Bodycam footage.* After officers arrested Mr. Haskins, they conducted a show-up identification with the 911 caller. This took place at 2872 West 15th Street. *Exhibit B –* Identification notice.

---

[1] S*ee* Neptune Avenue between West 21st Street and West 22nd Street- Google Maps, http://maps.google.com (last visited December 7, 2021).

5

## II. LEGAL ARGUMENT

### A. The Unlawful Search and Seizure

Seizures happen when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see also United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013). To be lawful under the Fourth Amendment, an investigatory seizure must be supported by reasonable suspicion that a person is committing or had committed a criminal offense. *See Arizona v. Johnson*, 555 U.S. 323 (2009). A reasonable basis for such a stop demands "specific and articulable facts which, taken together with rational inferences from those facts," *Terry*, 392 U.S. at 27, provide an officer with a "particularized and objective basis for suspecting wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). Officers unlawfully seized Mr. Haskins when they stepped out of a police van, immediately placed their hands on him, and began to search him. When the police seized Mr. Haskins, they lacked the requisite particularized articulable suspicion to do so.

Mr. Haskins' presence in the general vicinity of the purported robbery in conjunction with his race and height was not enough to establish reasonable suspicion for a seizure and search. Besides his temporal and spatial proximity to the alleged attempted robbery, there was nothing suspicious about Mr. Haskins or his behavior. The discrepancies between the description provided by the 911 caller and Mr. Haskins are additional factors that establish

that the seizure was unlawful. Mr. Haskins was alone and wearing khaki color pants (not black) and a blue jacket (not black and blue). *United States v. Swindle* is instructive. 407 F.3d 562 (2d Cir. 2005). In *Swindle*, after considering the totality of the circumstances, the Second Circuit determined that a stop was unreasonable based on the suspect being of the same race, driving the same car as a wanted fugitive, and in the area that the wanted person had previously been seen. *Id.* 570. This Court should do the same.

Mr. Haskins' actions after the officers exited the police vehicle further supports that the stop was unreasonable and in violation of the Fourth Amendment. Mr. Haskins did not attempt to evade or flee the police. He made no furtive gestures and displayed no bulge. *See e.g., United States v. Bellamy*, 592 F. Supp. 2d 308, 319-20 (E.D.N.Y. 2009) (finding that "reasonable suspicion did not arise upon the officers' approach of [defendant]" when "the officers had no reason to doubt the veracity of [his] response" to the question whether he lived in the building, and officer "did not testify that [defendant] was evasive in answering the only inquiry that officers posed to him.") (internal quotations omitted). Nevertheless, the NYPD seized Mr. Haskins and proceeded to conduct an unlawful search.

When examining the "constitutionality of a frisk for weapons, the Court must examine the facts that preceded the frisk." *United States v. Weaver,* 9 F.4th 129, 140 (2d Cir. 2021). When the NYPD officer began to frisk Mr. Haskins, he did not have reasonable suspicion to believe Mr. Haskins was dangerous or armed. There were no additional factors present to justify the search - no corroboration made by the officers of the description as provided by the 911 caller nor actions by Mr. Haskins which served to enhance any degree

7

of suspicion that the officers possessed. *Cf. Weaver* at 147 (Immediately prior to the officer frisking the defendant, "he had *thrice* witnessed [the defendant] make suspicious movements concentrated around his waist and pelvis.").

## II. Statements at the Arrest Scene Must Be Suppressed

This Court should suppress Mr. Haskins' statements made at the arrest scene because they were in response to an interrogation while in custody. *Miranda* created a clear rule: no custodial interrogation may proceed until 1) *Miranda* warnings are effectively and adequately conveyed and 2) the defendant knowingly, intelligently, and voluntarily waives his rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). A suspect is in custody for *Miranda* purposes when subjected to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest," *California v. Beheler*, 463 U.S. 1121, 125 (1983), where a reasonable person in their position would feel "not at liberty to terminate the interrogation and leave." *Tankleff v. Senkowski*, 135 F.3d 235, 243 (2d Cir. 1998). An interrogation includes express questioning as well as its "functional equivalent," meaning "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

When the police seized Mr. Haskins, they surrounded him and proceeded to search him. A reasonable person in that position would not feel free to leave. The officers interrogated Mr. Haskins when they asked questions relating to the purported robbery, that

8

were designed to elicit an incriminating response. The very first question that the officer asked was about the second alleged perpetrator. *See* Dec. ¶6; *see e.g., United States v. Szymaniak*, 934 F.2d 434, 439 (2d Cir. 1991) (confronting defendant with incriminating information was interrogation). All statements made at the arrest scene should be suppressed.

### III. The Unduly Suggestive Show-Up Identification Procedure

"It is an elementary maxim that a search, seizure or arrest cannot be retroactively justified by what is uncovered." *United States v. Como*, 340 F.2d 891, 893 (2d Cir. 1965). After Mr. Haskins was seized, law enforcement conducted an unconstitutionally suggestive show-up identification procedure. The positive show-up identification cannot justify the unlawful search and seizure. Additionally, based on the information disclosed thus far, an in-court identification by the unnamed caller would not be independently reliable. Any identification of Mr. Haskins should therefore be suppressed. At a minimum, the Court should hold a *Wade* hearing.

"When the prosecution offers testimony from an eyewitness to identify the defendant as the perpetrator of the offense, fundamental fairness requires that the identification testimony be reliable." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). This judicial inquiry proceeds in two steps. The first step is for the Court to determine "whether the pretrial identification procedures were unduly suggestive of the suspect's guilt." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If it is determined that the pretrial identification procedures were unduly suggestive, the Court proceeds to the second step of

9

the inquiry: to "weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." *Maldonado-Rivera*, 922 F.2d at 974. The relevant indicia of reliability are determined by "the facts of each case and the totality of the circumstances," *Maldonado-Rivera*, 922 F.2d at 973, by reference to the factors set forth by the Supreme Court's decision *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972): "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* The identification evidence should go to the jury only "if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances." *Perry*, 132 S. Ct. at 720.

By their nature, show-ups are suggestive, as there is only a single person for the witness to identify. *Manson v Brathwaite*, 432 US 98, 111 (1977). Moreover, the witness is usually influenced by the fact the police believe the person who they are showing to the witness is guilty because the witness assumes the police would not have them identify an innocent person. *United States v Watkins*, 741 F.2d 692, 694 (5th Cir 1984). It is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before trial. *U.S. v. Wade*, 388 U.S. 218, 229 (1967). Due process requires exclusion of

10

testimony of a pretrial identification when the identification procedures used were unnecessarily suggestive and thus conducive to mistaken identification that cannot be repaired. *U.S. v. Hill*, 967 F.2d 226, 229-30 (6th Cir. 1992). Exclusion is required here.

The government has not shown that 911 caller's identification, although tainted by the show-up identification, nevertheless has an independent reliable basis. The discovery provided thus far does not contain any details that touch on the "indicia of reliability," or lack thereof. At a minimum, a hearing is necessary to evaluate and balance the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972) in order to determine whether an identification can be independently reliable.

### IV.    Fruits of the Unlawful Seizure

Any evidence obtained as the result of an unreasonable search or seizure cannot be introduced as evidence of a defendant's guilt. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1983). Because the stop and subsequent search of Mr. Haskins was unreasonable, all evidence obtained in connection with the stop, seizure, and arrest must be suppressed. This evidence includes the firearm recovered at the scene of the arrest and any tangible evidence recovered later at the precinct. Statements made by Mr. Haskins subsequent to the stop and the identification made by the 911 caller should similarly be suppressed as fruits of the illegal seizure. *See Dunaway v. New York*, 442 U.S. 200, 218 (1979).

## CONCLUSION

For the foregoing reasons, the Court should (1) suppress all physical evidence obtained after the unlawful seizure (2) suppress all post arrests statements and (3) suppress identification evidence relating to the 911 caller or (4) in the alternative, conduct an evidentiary hearing.

Dated: December 8, 2021                                         Respectfully Submitted,

                                                                */s/ Ashley Burrell*
                                                                Ashley Burrell
                                                                Assistant Federal Defender

cc: AUSA Samantha Alessi (via ECF)